

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:MKC
F. #2019R01502

*610 Federal Plaza*
*Central Islip, New York 11722*

November 14, 2019

By ECF

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 14 2019 ★

LONG ISLAND OFFICE

The Honorable Anne Y. Shields
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11201

Re:   United States v. Andrew Frey, 19-CR-537(DRH)

Dear Judge Shields:

The government submits this letter in advance of the arraignment scheduled in this case on November 15, 2019. For the reasons stated below, the government requests that the defendant Andrew Frey be permanently detained before trial because he represents both a danger to the community and a flight risk.

I.   Background

On or about November 14, 2019, a grand jury sitting in the Eastern District of New York handed down an indictment charging Frey with two counts of attempted trafficking by force and two counts of attempted kidnapping in violation of Title 18, United States Code, Section 1594(a) and 1201(d), respectively. The charges arise from two occasions where Frey attempted to kidnap female sex workers with the intent of forcing them to engage in commercial sex acts.

The defendant Andrew Frey has demonstrated a propensity to commit violence against female sex workers. Frey identified potential victims, including the women identified in the indictment as Jane Doe #1 and Jane Doe #2, by soliciting and patronizing them for commercial sex. Thereafter, using a cellular telephone, Frey arranged a subsequent meeting with the women. Then, using both force and threats of force, Frey attempted to take the women – over their strong objections – to a secluded location. Jane Doe #1 and Jane Doe #2 both separately managed to escape Frey by jumping from his moving vehicle and sustaining injuries in the process.

II. <u>Legal Standard</u>

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3156, "requires that an accused be detained pending trial where, following a hearing in accordance with § 3142(f), 'the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. English, 629 F.3d 311, 318 (2d Cir. 2011) (quoting 18 U.S.C. § 3142(e)(1)). The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

To meet its burden, the government may proceed by proffer to establish facts relevant to a detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

"The court evaluating risk of flight is to consider the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community." United States v. Zarrab, No. 15-CR-867(RMB), 2016 WL 3681423, at *2 (S.D.N.Y. June 16, 2016) (citations omitted); see also United States v. Bruno, 89 F. Supp. 3d 425, 429 (E.D.N.Y. 2015).

The Second Circuit has viewed home detention and electronic monitoring as insufficient to protect the community against some dangerous individuals:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

2

Millan, 4 F.3d at 1049 (internal citations and quotation marks omitted); see also United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) (noting that "electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal citations and quotation marks omitted). Moreover, "the Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release." Bruno, 89 F. Supp. 3d at 430 (citing United States v. Rodriguez, 950 F. 2d 85, 88 (2d Cir. 1991)).

III. Argument

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g). The four factors articulated in the Bail Reform Act typically guide courts' analysis as to both risk of flight and dangerousness. See, e.g., United States v. Horton, No. 16-CR-212 (LAK), 2016 WL 6126669, at *8-13 (S.D.N.Y. Oct. 20, 2016). In this case, each factor militates strongly towards detention of the defendant.

A. The Nature and Circumstances of the Instant Offense

The allegations in this case make clear that the defendant poses a significant risk to the community. Each of the four counts of the indictment charge the defendant with attempted violence towards female sex workers. The nature of his conduct towards Jane Does #1 and #2 was sufficiently violent that both deemed it a safer option to throw themselves from a moving vehicle in order to escape the defendant.

Moreover, the defendant continued to attempt to contact both Jane Doe #1 and Jane Doe #2 after they escaped from his vehicle—making clear that he is an ongoing threat to these victims and others. Indeed, on one occasion after the kidnapping charged in Count Two, the defendant, armed with a weapon, again attempted to take Jane Doe #1 by force but Jane Doe #1 managed to evade his attempt.

B. The History and Characteristics of the Defendant and the Seriousness of the Danger Posed by the Offender's Release

The defendant's history and characteristics also support detention. In addition to the foregoing, other sex workers have reported violent encounters with the defendant. One victim sought and received an order of protection against the defendant after the defendant intentionally rammed his vehicle into hers. She later reported that the defendant violated that order of protection by calling her and leaving her threatening voicemails. Given the defendant's pattern of aggressive conduct against sex workers and the fact that the defendant targets sex workers, an especially vulnerable category of persons unlikely to report acts of

3

violence against them to members of law enforcement, it is likely that the defendant has victimized many others who have not yet reported their experiences to law enforcement.

In addition, the defendant has prior convictions for: (1) criminal possession of a controlled substance in the seventh degree; (2) criminal possession of stolen property in the fifth degree; (3) unauthorized use of a vehicle; (4) criminal mischief; and (5) criminal possession of a controlled substance in the fifth degree with intent to sell, a felony. With respect to the latter two, it is notable that a cumulative three bench warrants were issued for the defendant throughout the pendency of the proceedings.

The foregoing establishes that the defendant has a history of criminal activity and of violating court orders. It also demonstrates that he has engaged in multiple acts of violence against victims that he continued to pursue after they escaped him. In the current indictment, the defendant faces a 15-year mandatory minimum sentence. (18 U.S.C. §§ 1594(a) and 1591(b)(1).) His incentive to flee is high and the danger to the community should he do so even higher.

C.  The Weight of the Evidence

The evidence of the defendant's guilt is exceedingly strong. The government intends to prove the defendant's guilt at trial through the testimony of multiple witnesses, including Jane Doe #1 and Jane Doe #2; evidence seized from the defendant's residence including rope, zip ties and manuals on knot tying; phone records and photographs documenting the injuries sustained during the defendant's actions.

IV.  Conclusion

For the reasons set forth above, the defendant poses a danger to the community and a risk of flight if released pending trial, and no combination of bail conditions will ensure the safety of the community and the defendant's continued appearance before the Court.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:  /s/ _____
Monica K. Castro
Assistant U.S. Attorney
(631) 715-7894