```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------
UNITED STATES OF AMERICA


            -v-                          MEMORANDUM OF LAW
                                         19 Cr. 537 (DRH)
ANDREW FREY,

            Defendant
-----------------------------
```

**MOTION TO DISMISS COUNTS ONE AND THREE AS**
**UNCONSTITUTIONAL AS-APPLIED TO ANDREW FREY**

<u>INTRODUCTION</u>

Andrew Frey respectfully submits this Memorandum of Law in support of his pretrial motion pursuant to Federal Rule of Criminal Procedure 12 to dismiss counts one and three of the indictment against him as these charges are unconstitutional as-applied to him; and pursuant to Federal Rule of Criminal Procedure 7(c)(1) as they are facially insufficient. Andrew Frey is charged in an indictment with four alleged criminal violations: attempted sex trafficking – Jane Doe #1 (count one), attempted kidnapping – Jane Doe #1 (count two), attempted sex trafficking – Jane Doe #2 (count three) and attempted kidnapping – Jane Doe #2 (count four). Counts one and three charge attempted sex trafficking under Title 18 United States Code, Section 1591(a)(1). Section 1591 is known as The Victims of Trafficking and Violence Protection Act of 2000 (Pub. L. No. 106-386), (amended under The Justice for Victims of

Trafficking Act which added "patroniz[ing]" and "solicit[ing]" as alternatives to the section 1591(a)(1) action element. Pub. L. No. 114-22 (05/29/2015)). Congress enacted this statute utilizing its authority under the Commerce Clause as Congress found that human trafficking "particularly of woman and children in the sex industry has an aggregate economic impact on interstate and foreign commerce." *22 U.S.C. § 7101(b)(2) and (12)*. Hence, prohibiting sex trafficking is a valid exercise of Congress's Commerce Clause power. However, in Mr. Frey's case, neither Jane Doe #1 nor Jane Doe #2 are trafficking victims as delineated and understood by Congress in enacting this statute, but both women work independently and willing engaging in sexual acts for payment. They are not minors, but adults and Mr. Frey is not their "pimp," but their customer.

## PRELIMINARY STATEMENT[1]

Andrew Frey was arrested in the early morning hours of November 15, 2019 at the home he shares with his wife and two adult children in Coram, NY. At the same time, agents searched his home and vehicle. Mr. Frey was taken to the FBI office in Melville, questioned, and then brought to federal court in Central Islip. The parties appeared before Magistrate Judge Shields for the Rule 5 proceeding and Mr. Frey entered a plea of

---

1 Information for preliminary statement taken from charging instruments, discovery, the record in this case, conversations with the defendant and independent investigation.

not guilty. The government requested detention alleging that Mr. Frey was both a risk of non-appearance and a danger to the community.[2] In its letter requesting detention the government asserted:

> Frey identified potential victims, including the women identified in the indictment as Jane Doe#1 and Jane Doe #2, by soliciting and patronizing them for commercial sex. Thereafter, using a cellular telephone, Frey arranged a subsequent meeting with the women. Then, using both force and threats of force, Frey attempted to take the women – over their strong objections – to a secluded location. Jane Doe #1 and Jane Doe #2 both separately managed to escape Frey by jumping from his moving vehicle and sustaining injuries in the process.

*See* ECF document no.4 at 1. A detention hearing was not held at that time and counsel reserved Mr. Frey's rights.[3] Judge Shields entered an order of detention.

Counts one and three allege that on unnamed dates in October, 2018 and July 2019, Andrew Frey "did knowingly and intentionally attempt to entice, transport, obtain, patronize and solicit by any means a person, to wit: (Jane #1 and #2), an individual whose identity is known to the Grand Jury, in and affecting interstate commerce, knowing that force, threats of force, fraud and coercion and a combination thereof would be used to cause (Jane Doe #1 and #2) to engage in one or more commercial

---

2. The government filed a letter immediately before the Rule 5 proceeding requesting detention. ECF document no. 4.

3. A detention hearing was held on January 28, 2020 before Judge Locke. Bail was denied.

sex acts, contrary to Title 18 United States Code, Section 1591(a)(1)." *See* indictment, ECF document no. 1.

Based on the indictment and the government's more particularized allegations in its detention letter, Andrew Frey is charged with and the government will seek to prove, *inter alia*, that he asked two women who worked **voluntarily as prostitutes** to meet him for sex, that they met him for sex, that on those two unnamed dates they did not want to have sex in a particular location. **The government does not allege that Andrew Frey or anyone else forced Jane Doe 1 or 2 to work as prostitutes.**

Upon information and belief, Mr. Frey has been patronizing prostitutes for a number of years without force or threats of force and in fact had previously engaged in sex for money with Jane Doe 1 and 2 on a number of occasions and in different locations. Additionally, we have reason to believe that the government and or its agents interviewed other women who indicated they had sex for money with Andrew Frey on a number of other occasions, in different locations, all without any manner of force or threats of force. We also have reason to believe that Jane Doe 1 & 2 admitted to the government and or its agents that they in fact had sex for money with Andrew Frey on a number of other occasions without force or

4

threats of force.[4]

**I. ARGUMENT**

A. The Statute – 18 U.S.C. § 1591

1. The Commerce Clause

Section 1591 is known as The Trafficking Victims Protection Act of 2000 (TVPA) (Pub. L. No. 106-386, 114 Stat. 1464), (amended under The Justice for Victims of Trafficking Act which added "patroniz[ing]" and "solicit[ing]" as alternatives to Section 1591(a)(1) action element. Pub. L. No. 114-22 (05/29/2015)). 18 U.S.C. § 1591 is titled, Sex trafficking of children or by force, fraud, or coercion. Sex trafficking is defined in the Act as "the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act." 18 U.S.C § 1591(a)(1) states, in pertinent part:

> Whoever knowingly-
>   in or affecting interstate or foreign commerce,
>   or within the special maritime and territorial
>   jurisdiction of the United States, recruits, entices
>   harbors, transports, provides, obtains, advertises,
>   maintains, patronizes, or solicits by any means
>   a person…
>
>   knowing… that, means of force, threats of force,
>   fraud, coercion described in subsection (e)(2), or
>   any combination of such means will be used to cause
>   the person to engage in a commercial sex act, …
>   shall be punished as provided in subsection (b).

In § 1591 (e)(2), "coercion" is described as:

---

4 The defense made a demand for Brady material in our first discovery request dated November 20, 2019. The defense will be filing another, follow-up discovery request specifically asking for these statements.

> threats of serious harm to or physical restraint against any person;
>
> any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
>
> the abuse or threatened abuse of law or the legal process.

In § 1591 (e)(3), "Commercial sex act" is describes as:

> any sex act, on account of which anything of value is given to or received by any person.

The Commerce Clause of the United States Constitution grants Congress "the power to regulate activities that substantially affect interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005); *United States v. Lopez*, 514 U.S. 549, 558-59, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995). To determine whether an activity regulated by Congress "substantially affects interstate commerce," courts must weigh four factors: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an 'express jurisdictional element' linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) attenuation of the link between the regulated activity and interstate commerce. *United*

*States v. Guzman*, 591 F.3d 83, 89-90 (2d Cir. 2010, as amended (Jan. 8, 2010) (*quoting United States v. Morrison*, 529 U.S. 598, 611-12, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000)). 18 U.S.C. § 1591 satisfies all four *Morrison* factors. As stated in *United States v. Barnes*, 2018 U.S. Dist. LEXIS 175443 (W.D.N.Y. June 28, 2018):

> [t]he cases analyzing whether sex trafficking as prohibited by section 1591(a) "substantially affects interstate commerce" all conclude that the statute is a proper exercise of Congress's Commerce Clause authority. *See* United States v. Campbell, 111 F. Supp. 3d 340, 346 (W.D.N.Y. 2015)(finding that section 1591(a) is a valid exercise of Congress's Commerce Clause power); *see also* United States v. Phea, 755 F.3d 255, 263 (5th Cir. 2014) (rejecting the defendant's argument that Congress could not validly regulate purely local activity under the Commerce Clause pursuant to section 1591(a)); United States v. Evans 476 F. 3d 1176, 1179 (11th Cir. 2007) (stating that Congress found that human trafficking, "particularly of women and children in the sex industry… has an aggregate economic impact on interstate and foreign commerce" and holding that the finding is not "irrational"); United States v. Chappell, NO CRIN09-139 JNE/JJK, 2010 U.S. Dist. LEXIS 27941, 2010 WL 1131474, at *7 (D. Minn. Jan. 12, 20101), report and recommendation adopted, No. CRIM09-139 JNE/JJK, 20101 U.S. Dist. LEXIS 27102, 20101 WL 1131473 (D. Minn. Mar. 22, 2010) (agreeing with the "[s]everal courts [that] have concluded that 1591 satisfies each of the four factors" in Morrison).

2. The Legislative History

The legislative history of the TVPA clearly shows that Congress intended to enact a "comprehensive regulatory scheme," to "criminalize and attempt to prevent slavery, involuntary

7

servitude, and human trafficking for commercial gain." *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007). Congress recognized that human trafficking, particularly of women and children in the sex industry, "is a modern form of slavery and is the largest manifestation of slavery today." *22 U.S.C. § 7101(b)(1); see also id. at § 7101 (b)(2), (4), (9), (11)*.[i] Congress used its Commerce Clause authority to prohibit sex trafficking (section 1591) as it concluded that **human trafficking "substantially affects" interstate commerce.** *See United States v. Campbell*, 111 F. Supp. 3d 340, 346 (W.D.N.Y. 2015) (Emphasis added).

The Justice for Victims of Trafficking Act added "patroniz[ing]" and "solicit[ing]" as alternatives to the section 1591(a)(1) action element. Pub. L. No. 114-22 (05/29/2015). Congress enacted these amendments to clarify the range of conduct punished as sex trafficking. *See* Pub. L. No. 114-22. "[S]ection 108 of this title amends section 1591 of title 18, United States Code, to add the words 'solicits or patronizes' to the sex trafficking statute making absolutely clear for judges, juries, prosecutors, and law enforcement officials that criminals who **purchase sexual acts from human trafficking victims** may be arrested, prosecuted, and convicted as sex trafficking offenders

8

when this is merited by the facts of a particular case. *Id*. (Emphasis added.)

B. § 1591(a) Is Unconstitutional As Applied To Andrew Frey

In researching this statute, I have not come across any case in which an individual who engaged in or attempted to engage in sex in exchange for money with an adult who is acting voluntarily as a prostitute, has been charged with sex trafficking. There does not appear to be a fact pattern such as presented in the case at bar in the federal case histories. The reason why this appears to be the only case ever brought under such facts is, we submit, that this statute was never intended to encompassed such conduct – that is – a "john" patronizing an adult voluntarily engaging in prostitution. Assuming, arguendo, the government's allegations are true, these are exclusively state crimes: patronizing a prostitute; attempted rape; false imprisonment; or harassment.

Congress unambiguously enacted § 1591(a) to combat sex trafficking, that is, "…prevent slavery, involuntary servitude, and human trafficking for commercial gain…." *See supra*. Furthermore, Congress amended the statue to include "patroniz[ing]" and "solicit[ing]" to make it clear that individuals who "purchase sexual acts from human trafficking victims may be arrested, prosecuted, and convicted as sex

9

trafficking offenders…" *See supra*. The government has never referred to either Jane Doe 1 nor Jane Doe 2 to by as anything other "sex workers." The government has never alleged that they are minors or trafficking victims. According to the government they are adults voluntarily engaging in sex for money. They had engaged in sex for money with Mr. Frey on other occasions and at different locations. Mr. Frey is not in business with these women – he buys their services which they in fact consent to give in exchange for money.

Congress used its authority under the Commerce Clause to prohibit sex trafficking (section 1591) because it concluded that **human trafficking "substantially affects" interstate commerce** but purely in-state voluntary, adult prostitution does not affect interstate commerce. The defense <u>is not arguing</u> that section 1591 cannot reach purely in-state activity. It can, but it reaches in-state victimization that has a cumulative effect on interstate commerce. That is what the statute was meant to do.

In *United States v. Evans*, 476 F.3d 1176 (11th Cir. 2007) the defendant pled guilty to enticing a minor to engage in a commercial sex act in violation of section 1591(a)(1), and enticing a minor to engage in prostitution in violation of section 2422(b). Evans appealed arguing that the District Court erred in denying his as-applied challenge to the constitutionality of the two statutes.

Evans alleged that his actions were purely local and the stipulated facts were insufficient to satisfy the jurisdictional interstate commerce elements of the offense. The Court held that Evans's activities – enticing a minor to commit prostitution solely within Florida – was entirely within the parameters of the statute:

> We have no difficulty concluding that Raich[5], Maxwell[6] and Smith[7] foreclose Evans's challenge to the constitutionality of § 1591(a)(1) as applied to his activities occurring solely within Florida. Section 1591 was enacted as part of the Trafficking Victims Protection Act of 2000 ("TVA"), Pub, L. No. 106-386, 114 Stat. 1464…. Like the CSA[8] and the CPPA[9], the TVPA is part of a comprehensive regulatory scheme. The TVPA criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain. Congress recognized that human trafficking, particularly of women and children in the sex industry, "is a modern form of slavery, and is the largest manifestation of slavery today." (Citations Omitted). Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce…, and we cannot say that this finding is irrational.

---

[5] *Gonzalez v. Raich*, 545 U.S. 1, 17, 125 S. Ct. 2195, 162L. Ed. 2d 1 (2005). (Congress's power includes the ability to "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce.")

[6] *Unites States v. Maxwell*, 446 F.3d 1210, 1215 (11th Cir.), *cert. denied*, 127 S. Ct. 705, 166 L. Ed 2d 545 (2006) ("Where Congress has attempted to regulate (or eliminate) an interstate market, Raich grants Congress substantial leeway to regulate purely intrastate activity (whether economic or not) that it deems to have the capability, in the aggregate, of frustrating the broader regulation of interstate economic activity.")

[7] *United States v. Smith*, 459, F.3d 1276, 1284-85 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 990, 166 L. Ed. 2d 747, 2007 U.S. LEXIS 413, 75 U.S.L.W. 3352 (U.S. Jan. 8, 2007) (no. 06-7780). ("§ 2251(a) like § 2252A(a)(5)(B), is part of a comprehensive regulatory scheme that could be frustrated by purely intrastate activity considered in the aggregate.")

[8] Controlled Substances Act.

[9] Child Pornography Prevention Act of 1996.

*Evans* at 1179. The Court particularly noted that "Section 1591 does not criminalize all acts of prostitution (a vice traditionally governed by state regulation). Rather, its reach is limited to sex trafficking that involves children or is accomplished by force, fraud, or coercion." *Id*. at n.1 *citing* 18 U.S.C. § 1591(a). The Court further stated that '[w]hile [Evans's] activities may be minor in the national and international market of trafficking children for commercial sex acts, his acts contribute to the market that Congress'[s] comprehensive scheme seeks to stop." *Id*.

Andrew Frey did not solicit sex from minors. Furthermore, his soliciting and patronizing adult women voluntarily engaging in sex for money, does not contribute to a national or an international human trafficking market. Mr. Frey is not a "pimp" – he pays for sex; he does not take money from the women nor is he involved in their business with them. He calls them for a "date" and they meet him at an agreed upon location. He does not and never has forced, coerced, or threatened any women into having sex with him. He asks, they agree and engage, and he pays them their agreed upon price. Unlike Evans's activities, Mr. Frey's activities, if "considered in the aggregate with similar conduct by others," would not "frustrate Congress's broader regulation of interstate and foreign economic activity." *Evans* at 1179. There is no interstate travel, no credit card use, no money flowing to Mr. Frey from the

12

Does, no rented hotel rooms, and no drugs given to the women by Mr. Frey. In short, Mr. Frey's activity is not the kind of activity that Section 1591 was meant to reach. It does not matter if Mr. Frey used telephone was used to arrange the meeting for sex as it would not matter under these facts if he used a computer or mailed them a letter to ask for a meeting. This statute is unconstitutional as applied to him because it does not reach and was never meant to reach his conduct.

## II. ARGUMENT

### Counts One and Three Should Be Dismissed As They Are Facially Insufficient

The indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged…." Federal Rules of Criminal Procedure 7(c)(1). An indictment that recites the elements of an offense informs the Court "of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had," *United States v. Cruikshank*, 92 U.S. 542, 558, 23 L. Ed. 588 (1876). The indictment also needs to be specific enough for a defendant to prepare a defense to conform to the Sixth Amendment requirement that a defendant "be informed of the nature and cause of the accusation," U.S. Const. amend. VI. The indictment should also sufficiently set forth the elements of the offense with adequate factual specificity to prevent a subsequent prosecution

in violation of the Fifth Amendment double jeopardy clause. *Gordon Mehler, John Gleeson, and David C. James, Federal Criminal Practice: A Second Circuit Handbook § 25-3, at 462 (17th ed. 2017).* *United States v. Quintana*, 2017 U.S. Dist. LEXIS 217014, *26.

An indictment which tracks the language of the statute is (usually)sufficient to meet these notice requirements. *United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002) ("[A]n indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him . . . state time and place in approximate terms."); *United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998). ("It is well settled that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense" and "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime") (quotations and citations omitted); *United States v. Citron*, 783 F.2d 307, 314 (2d Cir. 1986) ("Where ... an indictment tracks the statutory language and specifies the nature of the criminal activity . . . it is sufficiently specific to withstand

a motion to dismiss") (quotation and citation omitted). *United States v. Seabrook*, 2010 U.S. Dist. LEXIS 133565, *4-5.

In the case at bar, one of the elements of attempted sex trafficking is that Mr. Frey must, <u>know</u> that "force" or "threats of force" would be used to cause Jane Doe 1 and Jane Doe 2 to engage in one or more commercial sex acts. The TVPA requires that the government must "plausibly allege that the defendant [attempted to patronize and solicit] them knowing that he would use force [or threats of force] to cause a commercial sex act to take place." *Ardolf v. Weber, 332 F.R.D. 467, 475* (S.D.N.Y. July 25, 2019)(*citing United States v. Todd*, 627 F.3d 329,333-34 (9th Cir. 2010)) (The TVPA "requires the pleader allege awareness, at the initial recruitment or enticement stage, that certain prohibited means will be employed to achieve a perverse end goal: a commercial sex act."). "One way of pleading this knowledge is by alleging that Defendant engaged in a *modus operandi*, such that he knew that he had a pattern of using fraud or force to cause commercial sex acts with victims." *Id. (citing Id.* at 334). ("[w]hat the statute means to describe . . . awkwardly, is a state of mind in which the knower is familiar with a pattern of conduct."). *See also*, *Noble v. Weinstein*, 335 F. Supp. 504, 518 (S.D.N.Y. Aug. 14, 2018) ("Here, the pattern of behavior included in the Amended Complaint plausibly alleges a knowledge and

15

understanding that, from the start of their professional relationship in February 2014, Harvey would use fraudulent means to entice Noble to engage in a sex act with him. The promise of a film role, the interview with Ford for the film role, and the assurances that 'everything will be taken care of for you if you relax,' including as he forced her to masturbate him, support this. That Harvey's promises—all professional in nature—became more frequent and elaborate once he and Noble were alone in the hotel room, and eventually the bathroom, plausibly alleges knowledge that fraud would be used.")

In the case at bar, the government does not allege a plausible knowledge element.

## CONCLUSION

For all of the foregoing reasons, the defendant, Andrew Frey, respectfully asks this Court to dismiss counts one and three of the indictment as the statute, § 1591, is unconstitutional as applied to him. Additionally, we are asking that these charges be dismissed as they are facially insufficient.

Date: September 22, 2020

Respectfully Submitted

_____
Tracey L. Gaffey
Assistant Federal Defender

cc: Monica Castro,
Assistant U.S. Attorney

Mr. Andrew Frey

Clerk of the Court, EDNY

---

[i] § 7101. Purpose and findings

   (a) Purposes. The purposes of this division are to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.

   (b) Findings. Congress finds that:

      (1) As the 21st century begins, the degrading institution of slavery continues throughout the world. Trafficking in persons is a modern form of slavery, and it is the largest manifestation of slavery Today. At least 700,000 persons annually, primarily women and children, are trafficked within or across international borders. Approximately 50,000 women and children are trafficked into the United States each year.

      (2) Many of these persons are trafficked into the international sex trade, often by force, fraud, or Coercion. The sex industry had rapidly expanded over the past several decades. It involves Sexual exploitation of persons, predominantly women and girls, involving activities related to prostitution, pornography, sex tourism, and other commercial sexual services. The low status of women in many parts of the world has contributed to a burgeoning of the trafficking industry.

      (3) Trafficking in persons is not limited to the sex industry. This growing transnational crime also Includes forced labor and involves significant violations of labor, public health, and human rights standards worldwide.

      (4) Traffickers primarily target women and girls, who are disproportionately affected by poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin. Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models. Traffickers also buy children from poor families and sell them into prostitution or into various types of forced or bonded labor.

      (5) Traffickers often transport victims from their home communities to unfamiliar destinations, including foreign countries away from family and friends, religious institutions, and other sources of personal protection and support, leaving the victims defenseless and vulnerable.

(6)Victims are often forced through physical violence to engage in sex acts or perform slavery-like labor  Such force includes rape and other forms of sexual abuse, torture, starvation, imprisonment, threats, psychological abuse, and coercion.

(7)Traffickers often make representations to their victims that physical harm may occur to them or others should the victim escape or attempt to escape.  Such representation can have the same coercive effects on victims as direct threats to inflict such harm.

(8)Traffickers in persons is increasingly perpetuated by organized, sophisticated criminal enterprise.  Such trafficking is the fastest growing source of profits for organized criminal enterprises worldwide.  Trafficking in persons is often aided by official corruption in countries of origin, transit, and destination, thereby threatening the rule of law.

(9)Trafficking includes all the elements of the crime of forcible rape when it involved the involuntary participation of another person in sex acts by means of fraud, force, or coercion.

**(10)**Trafficking also involves violations of other laws, including labor and immigration codes and laws against kidnapping, slavery, false imprisonment, assault, battery, pandering, fraud, and extortion.

**(11)**Trafficking exposes victims to serious health risks. Women and children trafficked in the sex industry are exposed to deadly diseases, including HIV and AIDS. Trafficking victims are sometimes worked or physically brutalized to death.

**(12)**Trafficking in persons substantially affects interstate and foreign commerce. Trafficking for such purposes as involuntary servitude, peonage, and other forms of forced labor has an impact on the nationwide employment network and labor market. Within the context of slavery, servitude, and labor or services which are obtained or maintained through coercive conduct that amounts to a condition of servitude, victims are subjected to a range of violations.

**(13)**Involuntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion. *In United States v. Kozminski, 487 U.S. 931 [101 L. Ed. 2d 788] (1988)*, the Supreme Court found that *section 1584 of title 18, United States Code*, should be narrowly interpreted, absent a definition of involuntary servitude by Congress. As a result, that section was interpreted to criminalize only servitude that is brought about through use or threatened use of physical or legal coercion, and to exclude other conduct that can have the same purpose and effect.

**(14)**Existing legislation and law enforcement in the United States and other countries are inadequate to deter trafficking and bring traffickers to justice, failing to reflect the gravity of the offenses involved. No comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme. Instead, even the most brutal instances of trafficking in the sex industry are often punished under laws that also apply to lesser offenses, so that traffickers typically escape deserved punishment.

**(15)**In the United States, the seriousness of this crime and its components is not reflected in current sentencing guidelines, resulting in weak penalties for convicted traffickers.

**(16)**In some countries, enforcement against traffickers is also hindered by official indifference, by corruption, and sometimes even by official participation in trafficking.

**(17)**Existing laws often fail to protect victims of trafficking, and because victims are often illegal immigrants in the destination country, they are repeatedly punished more harshly than the traffickers themselves.

**(18)** Additionally, adequate services and facilities do not exist to meet victims' needs regarding health care, housing, education, and legal assistance, which safely reintegrate trafficking victims into their home countries.

**(19)** Victims of severe forms of trafficking should not be inappropriately incarcerated, fined, or otherwise penalized solely for unlawful acts committed as a direct result of being trafficked, such as using false documents, entering the country without documentation, or working without documentation.

**(20)** Because victims of trafficking are frequently unfamiliar with the laws, cultures, and languages of the countries into which they have been trafficked, because they are often subjected to coercion and intimidation including physical detention and debt bondage, and because they often fear retribution and forcible removal to countries in which they will face retribution or other hardship, these victims often find it difficult or impossible to report the crimes committed against them or to assist in the investigation and prosecution of such crimes.

**(21)** Trafficking of persons is an evil requiring concerted and vigorous action by countries of origin, transit or destination, and by international organizations.

**(22)** One of the founding documents of the United States, the Declaration of Independence, recognizes the inherent dignity and worth of all people. It states that all men are created equal and that they are endowed by their Creator with certain unalienable rights. The right to be free from slavery and involuntary servitude is among those unalienable rights. Acknowledging this fact, the United States outlawed slavery and involuntary servitude in 1865, recognizing them as evil institutions that must be abolished. Current practices of sexual slavery and trafficking of women and children are similarly abhorrent to the principles upon which the United States was founded.

**(23)** The United States and the international community agree that trafficking in persons involves grave violations of human rights and is a matter of pressing international concern. The international community has repeatedly condemned slavery and involuntary servitude, violence against women, and other elements of trafficking, through declarations, treaties, and United Nations resolutions and reports, including the Universal Declaration of Human Rights; the 1956 Supplementary Convention on the Abolition of Slavery, the Slave Trade, and Institutions and Practices Similar to Slavery; the 1948 American Declaration on the Rights and Duties of Man; the 1957 Abolition of Forced Labor Convention; the *International Covenant on Civil and Political Rights*; the *Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment*; United Nations General Assembly Resolutions 50/167, 51/66, and 52/98; the Final Report of the World Congress against Sexual Exploitation of Children (Stockholm, 1996); the Fourth World Conference on Women (Beijing, 1995); and the 1991 Moscow Document of the Organization for Security and Cooperation in Europe.

**(24)** Trafficking in persons is a transnational crime with national implications. To deter international trafficking and bring its perpetrators to justice, nations including the United States must recognize that trafficking is a serious offense. This is done by prescribing appropriate punishment, giving priority to the prosecution of trafficking offenses, and protecting rather than punishing the victims of such offenses. The United States must work bilaterally and multilaterally to abolish the trafficking industry by taking steps to promote cooperation among countries linked together by international trafficking routes. The United States must also urge the international community to take strong action in multilateral fora to engage recalcitrant countries in serious and sustained efforts to eliminate trafficking and protect trafficking victims.