

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EG:MKC                                                        *610 Federal Plaza*
F. #2019R01502                               *Central Islip, New York 11722*

October 20, 2020

<u>By Hand and ECF</u>

The Honorable Denis R. Hurley
United States District Court
Eastern District of New York
Central Islip, New York 11722

                 Re:     United States v. Andrew Frey,
                          <u>Criminal Docket No. 19-537 (DRH)</u>

Dear Judge Hurley:

        The government respectfully submits this letter in response to the defendant Andrew Frey's September 22, 2020 motion to dismiss Counts One and Three of the Indictment in this case. ECF No. 23. As set forth more fully below, the defendant's motion is entirely premised on challenges to the sufficiency of the government's evidence, which cannot be determined absent a trial on the merits. Accordingly, the defendant's motion should be dismissed in its entirety.

BACKGROUND

        On or about November 14, 2019, a grand jury sitting in the Eastern District of New York handed down an indictment (the "Indictment") charging the defendant with two counts of attempted trafficking by force and two counts of attempted kidnapping in violation of Title 18, United States Code, Sections 1591(a) ("section 1591") and 1594(a) ("Count One" and "Count Three," collectively, the "Trafficking Counts") and 1201(d), respectively. The charges arise from the defendant's attempted kidnapping of two female sex workers with the intent of forcing them to engage in commercial sex acts.

        Specifically, Count One charges that, in or about October 2018, the defendant "did knowingly and intentionally attempt to entice, transport, obtain, patronize and solicit . . . Jane Doe #1 . . . in and affecting interstate commerce . . . knowing that force, threats of force, fraud and coercion and a combination thereof would be used to cause Jane Doe #1 to engage in one or more commercial sex acts." ECF No. 1. As the defendant notes, prior to the October 2018 incident at issue in Count One, the defendant had patronized and solicited Jane

Doe #1 for commercial sex. ECF No. 4. In October 2018, the defendant arranged a meeting for commercial sex with Jane Doe #1, using his cellular telephone. Once Jane Doe #1 was in his vehicle, the defendant stated his intention to take her to a secluded and remote area for the purpose of commercial sex. When she objected and sought to get out of his vehicle, the defendant attempted to kidnap her. Using both force and threats of force, the defendant attempted to take Jane Doe #1—over her strong objection—to the secluded location. Indeed, the circumstance escalated to the point that Jane Doe #1 was forced to escape by jumping from the defendant's moving vehicle, sustaining injuries in the process.

Similarly, Count Three charges that, in or about July 2019, the defendant "did knowingly and intentionally attempt to entice, transport, obtain, patronize and solicit . . . Jane Doe #2 . . . in and affecting interstate commerce . . . knowing that force, threats of force, fraud and coercion and a combination thereof would be used to cause Jane Doe #2 to engage in one or more commercial sex acts." ECF No. 1. As with Jane Doe #1, prior to the July 2019 incident at issue in Count Three, the defendant had patronized and solicited Jane Doe #2 for commercial sex. ECF No. 4. And, just as with Jane Doe #1, in July 2019, the defendant arranged a meeting with Jane Doe #2 for the purposes of commercial sex. Once she was in the vehicle, he attempted to use both force and threats force to take Jane Doe #2 to a secluded area over her objection. As a result, Jane Doe #2 was also forced to jump from the defendant's moving vehicle.

On November 15, 2019, the defendant was arrested in the instant case, arraigned before the Honorable Anne Y. Shields, United States Magistrate Judge in the Eastern District of New York, and a permanent order of detention was entered. On September 22, 2020, the defendant filed the instant motion seeking dismissal of the Trafficking Counts. Therein, the defendant argues that Counts One and Three of the Indictment are facially deficient under Federal Rule of Criminal Procedure 7(c)(1) and unconstitutional, as applied to the facts of this case. (Def.'s Mem. 1). In support of each argument, the defendant relies on disputed questions of fact that cannot be determined absent a trial on the merits. As such, the defendant's motion should be dismissed in its entirety.

ARGUMENT

I. The Trafficking Counts are Not Facially Invalid

    A. The Trafficking Counts are Sufficiently Pleaded Under Federal Rule of Criminal Procedure 7(c)

The dismissal of an indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted). Here, the defendant insists, inter alia, that dismissal is appropriate because the allegation that the defendant knew "force, threats of force, fraud and coercion" would be used against the victims is not "plausible." (Def.'s Mem. 15 (arguing that "the government does not allege a plausible knowledge element")). Notably, in support of this purported "plausibility" requirement, the defendant

2

cites to cases dealing with the civil right of action that Title 18, United States Code, Section 1595 ("section 1595") creates for section 1591 victims. See Ardolf v. Weber, 332 F.R.D. 467 (S.D.N.Y. 2019). In such cases, Federal Rule of Civil Procedure 12(b)(6) governs, which requires that a civil complaint plead "enough facts to state a claim to relief that is plausible on its face." Weber, 332 F.R.D. at 472.

Here, Federal Rule of Criminal Procedure 7(c)(1) governs, and it does not include any "plausibility" requirement. After all, any such requirement would contradict the overwhelming case law establishing that "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss." United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998) (dismissal of an indictment was improper where the district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge); accord Costello v. United States, 350 U.S. 359, 363 (1956); United States v. Sampson, 898 F.3d 270, 278-79 (2d Cir. 2018); United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004) ("[d]efendants will have other opportunities to contest the sufficiency of the Government's evidence, but a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion"); United States v. Cassese, 273 F. Supp. 2d 481, 484-85 (S.D.N.Y. 2003) (same and collecting cases).

Under Rule 7(c), an indictment is sufficiently pleaded where it is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Id. An indictment satisfies Rule 7(c) if it "'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Hamling v. United States, 418 U.S. 87, 117-18 (1974)); United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008). Thus, to withstand a motion to dismiss, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir.), cert. denied, 423 U.S. 832, (1975)); Hamling, 418 U.S. at 117-18 ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [it] . . . fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offence intended to be punished."). Here, Counts One and Three cite to and track the language of the relevant statutes and specifically identify the elements of the offense charged, as well as the time period, location and nature of the crime alleged. As such, the allegations are adequately pleaded. See United States v. Macklin, 927 F.2d 1272, 1276 (2d Cir. 1991).

Where, as here, an indictment is facially valid, it is "enough to call for trial of the charge on the merits." Costello, 350 U.S. at 363. Still, the defendant attempts to impose a plausibility standard in arguing for dismissal, which itself makes clear that, at bottom, defendant's motion is simply a challenge to the sufficiency of the government's evidence. In this manner, defendant's motion to dismiss "confuses standards of pleading with standards of

3

proof." See United States v. Messina, No. 11-CR-31 (KAM), 2012 U.S. Dist. LEXIS 17700, at *4 & n.1 (E.D.N.Y. Feb. 13, 2012); see also, e.g., United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) (finding there was "no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face").

### B. The Sufficiency of the Government's Evidence Cannot be Tested at this Stage of the Proceedings

Tellingly, while claiming to challenge the sufficiency of the government's pleading, the defendant questions whether his "modus operandi" demonstrates that he knew he would use force, threats of force, fraud or coercion to cause his victims to engage in commercial sex acts as alleged in the Indictment. (Def.'s Mem. 15 (again looking to the pleading standard in a civil action under section 1595, and noting that "one way of pleading [] knowledge [under section 1591] is by alleging that [the] [d]efendant engaged in a modus operandi, such that he knew that he had a pattern of using fraud or force to cause commercial sex acts with victims")). Rather than claiming any error in the government's pleading, this argument does little more than question whether the government will be able to prove its allegations. Whether there is sufficient evidence to demonstrate the knowledge element of the charged offenses cannot be answered absent a trial on the merits. Dismissal premised on such arguments is plainly improper. Federal Rule of Criminal Procedure 12(b)(1) only permits pretrial motions asserting a "defense, objection, or request that the court can determine without a trial on the merits."

Because the government's pleading is sufficient, the government is entitled to marshal and present its evidence at trial and, if warranted, have its sufficiency tested by a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. See, e.g., United States v. Reale, 96 Cr. 1069 (DAB), 1997 U.S. Dist. LEXIS 14167, at *6 (S.D.N.Y. Sep. 17, 1997) ("'while [D]efendants' arguments may properly be considered on a motion under Rule 29 of the Federal Rules of Criminal Procedure after the Government presents its proof, they do not support dismissal of the Indictment at this stage of the proceedings.'"). A defendant must wait until after the close of the government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence. See Fed. R. Crim. P. 29; see also, e.g., United States v. Elson, 968 F. Supp. 900, 905 (S.D.N.Y. 1997) ("[I]t is well established that an Indictment that is valid on its face may not be dismissed on the ground that it is based on inadequate or insufficient evidence.").

The Honorable Nicholas G. Garaufis's recent holding in United States v. Raniere is instructive in this regard. There, the defendant was charged under section 1591, among other counts, for his role in organizations where: (1) members received profit for directing subordinates to have sex with him; and (2) he promised career opportunities to subordinates who had sex with him and with whom he wanted to have sex. 384 F. Supp. 3d 282, 293 (E.D.N.Y. 2019). In a motion to dismiss, Raniere asserted, in part, that the government failed to state a claim because it could not show his codefendant knew force, fraud, or coercion would be used to cause someone to engage in a commercial sex act. Id. at 319-320. Specifically, Raniere, like the defendant in this case, argued the government could

4

not show his codefendant had the requisite knowledge "in the sense of being aware of an established modus operandi that will in the future cause a person to engage in [commercial sex acts]." Id. In denying the motion, the court held that such arguments "concern the sufficiency and/or truth of the allegations in the Complaint [and] raise factual questions not appropriate for decision on a pretrial motion to dismiss." Id. at 320 (citing Messina, 2012 U.S. Dist. LEXIS 17700, at *4); see also Modern Federal Jury Instructions-Criminal P 47A.03 (2020) (in section 1591 prosecution, "[w]hether or not the defendant had [the requisite] knowledge is a question of fact to be determined by [the jury] on the basis of all the evidence"). For the same reason, the defendant's Rule 7(c) claims fail.

### C. The Government's Proof at Trial Will Establish that the Defendant Knew Force, Threats of Force, Fraud or Coercion would be Used Against his Victims

In any event, the evidence at trial, including the defendant's modus operandi and other factors, will demonstrate that the defendant knew he would use force, threats of force, fraud or coercion against the victims as alleged in the Indictment. The evidence will show that the defendant was well aware that Jane Doe #1 and Jane Doe #2 would refuse to meet with him for commercial sex if they knew he intended to take them to secluded locations. In spite of this, the defendant falsely reassured them he would not seek to take them to such areas, only to then use actual and threatened force to attempt to keep them in his vehicle once his intentions were revealed. Moreover, the government expects to elicit testimony that will demonstrate the defendant intended to take the victims to secluded locations precisely because they facilitated his efforts to coerce them to engage in commercial sex acts, including, in addition to the traditional exchange of currency for sex acts at issue in this case, unprotected sex and elicit video recordings. See generally, Noble v. Weinstein, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018) ("Congress's use of expansive language in defining commercial sex act—using such terms as 'any sex act,' 'anything of value,' given to or received by 'any person'—requires a liberal reading."); United States v. Cook, 782 F.3d 983, 988-89 (8th Cir. 2015) ("[t]he phrase 'anything of value' is extremely broad" and encompasses "sexual acts, photographs, and videos"); United States v. Flanders, 752 F.3d 1317, 1331 (11th Cir. 2014) (elicit videos the defendant forced his victim to film were "a thing of value to [the defendant], who spent considerable time online looking at pornography as evidenced by his Internet searches for 'sex with unconscious women'"). Moreover, the evidence will show that the defendant historically exhibited acts of violence and coercive conducts towards other sex workers. See United States v. Todd, 627 F.3d 329 (9th Cir. 2010) (defendant's knowledge of his own modus operandi in using pattern of coercion against his trafficking victims was sufficient to support jury's verdict as to section 1591's knowledge element).

To the extent the defendant argues that such evidence could never suffice because, on other, uncharged occasions, he engaged in consensual commercial transactions with sex workers, including Jane Doe #1 and Jane Doe #2, he is wrong. Put simply, the fact that there were times when the defendant did not break the law does not determine whether there were times when he did. United States v. Mack, 298 F.R.D. 349, 354 (N.D. Ohio 2014) ("evidence that [the defendant] did not on other occasions use force or coercion to compel

5

other women to perform commercial sex acts would not negate allegations that he violated federal law on those occasions and with the identified alleged victims specifically set forth in the superseding indictment"). Courts have repeatedly held that prior consensual conduct is not dispositive in sex trafficking cases. United States v. Groce, 891 F.3d 260, 267-268 (7th Cir. 2018) (district court properly excluded evidence of victims' prostitution histories because victim's prior sexual conduct was irrelevant to sex-trafficking mens rea); United States v. McKinley, 647 Fed. Appx. 957, 960-961 (11th Cir.), cert. denied, 137 S. Ct. 513 (2016) (evidence was sufficient to convict defendant of sex trafficking since evidence showed that defendant kidnapped former prostitute and coerced victim by physical violence and threats to continue performing commercial sex); United States v. Valenzuela, 495 Fed. Appx. 817, 820 (9th Cir. 2012), cert. denied, 568 U.S. 1241 (2013) (victims' possible prior acts of prostitution were properly excluded at trial on section 1591 charges because evidence was irrelevant to either defendants' knowledge of use of force, fraud, or coercion, or victims' consent to work in prostitution).

Because the defendant's only challenge to the government's pleading is, in truth, a challenge to the sufficiency of the evidence the government will introduce at trial, his motion on these grounds must be denied.

## II. The Trafficking Counts are not Unconstitutional as Applied to the Defendant

### A. Defendant's Constitutional Challenge is Premature

The defendant asserts that section 1591 is unconstitutional as applied to him, because his conduct falls beyond the scope of the commerce clause—the mechanism through which Congress invokes federal jurisdiction in human trafficking cases. (Def.'s Mem. 12 (arguing that his "activities, if 'considered in the aggregate with similar conduct by others,' would not 'frustrate Congress's broader regulation of interstate and foreign economic activity.'")). As support, the defendant again does little more than disagree with the allegations in the Indictment—unilaterally asserting that he has never done more than "patronize adult women voluntarily engaging in sex for money" and "never forced, coerced or threatened any women into having sex with him." Id. This, of course, is disputed by the government. As alleged in the indictment, the government asserts, and will prove, that the defendant "attempt[ed] to entice, transport, obtain, patronize and solicit [his victims] . . . knowing that force, threats of force, fraud and coercion would be used to cause [them] to engage in one or more commercial sex acts." ECF No. 1 at ¶¶ 1 and 3. Indeed, the defendant's contention that his conduct towards the victims was entirely absent of coercion is belied by the uncontested fact that both victims jumped from a moving vehicle in order to get away from him.

In Raniere, the defendant also asserted that section 1591 was unconstitutional as applied to his conduct, and the Honorable Nicholas G. Garaufis denied the argument as premature. Raniere, 384 F. Supp. 3d at 320-21. In doing so, Judge Garaufis noted that implicit to the analysis of whether a statute is constitutional "as applied" to a defendant's conduct is the requirement that it be "clear what the defendant did." Id. at 320 (quoting

6

United States v. Ford, No. 3:14-CR-00045, 2016 U.S. Dist. LEXIS 111249, at *14 (D. Or. Aug. 22, 2016)). Thus, the court ruled that the defendant "must wait to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in." Id. Likewise here, the defendant's motion is premature because what, precisely, he did remains in dispute and cannot be determined absent a trial on the merits. Id.; see also United States v. Kettles, No. CR 3:16-00163-1, 2017 U.S. Dist. LEXIS 73592, at *3 (M.D. Tenn. May 15, 2017) (pretrial as-applied challenge to § 1591(a) was premature because "[t]he court cannot determine the nature and extent of [defendant's] conduct in this case and, therefore, also cannot determine whether § 1591(a) is void for vagueness as applied to that conduct"); United States v. Reyes, No. CR06-00556, 2007 U.S. Dist. LEXIS 101239, at *8 n.1 (N.D. Cal. Mar. 16, 2007) (as-applied constitutional challenge premature because "[w]ithout reference to any proof of what Defendants' conduct actually was . . . it is impossible to determine whether the statute provided sufficient notice that it prohibited the scheme of conduct in which they actually engaged").

B. The Government's Allegations Charge Conduct Governed by Section 1591

Even assuming, arguendo, that the defendant's as-applied challenge was ripe (it is not), it would still fail because the defendant's alleged conduct is precisely the kind of behavior section 1591 sought to combat. The defendant is accused of attempting to kidnap his victims using both force and threats of force, in order to compel them to engage in commercial sex acts. It is axiomatic that, in assessing a motion to dismiss, the Court must take these allegations as true. See, e.g., United States v. Murgio, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("In evaluating a motion to dismiss, the Court 'accept[s] as true all of the allegations of the indictment.'"); Stavroulakis, 952 F.2d at 693 ("[C]ommon sense must control, and . . . an indictment must be read to include facts which are necessarily implied by the specific allegations made.") (quotation marks and brackets omitted). As even the defendant acknowledges, these allegations, taken as true, would subject him to charges for attempted rape and false imprisonment. (Def.'s Mem. 9). When employed within the context of the commercial sex industry, rape, attempted rape and false imprisonment all come within the scope of Section 1591. Indeed, in enacting section 1591, Congress was expansive in identifying the harms it sought to protect against.

For example, Congress stated its intent to protect victims who, among other things, were "forced through physical violence to engage in sex acts," and noted that "[s]uch force includes rape . . . imprisonment, threats . . . and coercion." Victims of Trafficking and Violence Protection Act of 2000 (the "TVPA"), 2000 Enacted H.R. 3244, 106 Enacted H.R. 3244, 114 Stat. 1464, 1466. Congress further specified that "trafficking includes all the elements of the crime of forcible rape when it involve[s] the involuntary participation of another person in sex acts by means of fraud, force or coercion." Id. at 1467. In concluding that "trafficking in persons substantially affects interstate and foreign commerce," Congress accordingly sought to capture all of the conduct referenced above and alleged in the indictment. See id.

7

Still, despite clear congressional intent to the contrary, the defendant attempts to constrict section 1591 to the standard-issue sex trafficking cases involving a pimp who has forced minors or adults into prostitution. (Def.'s Mem. 2 and 12 (citing, in support of his argument that section 1591 cannot reach his conduct, the fact that he "is not a 'pimp'")). Courts have consistently declined to limit section 1591 in this fashion. See e.g., Lawson v. Rubin, 2018 U.S. Dist. LEXIS 71582, at *15 (E.D.N.Y. Apr. 29, 2018) (in a civil cause of action under section 1595, plaintiff plausibly alleged a violation of Section 1591 by alleging that the defendant, using, inter alia, promises of payment for modeling, lured women to his residence where he beat and sexually assaulted them); United States v. Thompson, 864 F.3d 837, 840-41 (7th Cir. 2017) (affirming conviction of defendant who "used the promise of modeling work to 'cause a person to engage in a commercial sex act.'"); United States v. Flanders, 752 F.3d 1317 (11th Cir. 2014) (affirming conviction of defendant who used the false pretense of a modeling audition to lure women he subsequently beat, raped and caused to film sex acts).

Indeed, in the context of a civil action under section 1595, a district court in the Southern District of New York recently considered a similar argument in Noble v. Weinstein. There, the defendant, Harvey Weinstein, urged the court to limit section 1591's application to "'the type of criminality for which the Government has historically prosecuted under Section 1591, such as child prostitution, torture, and child pornography.'" Noble v. Weinstein, 335 F. Supp. 3d 504, 516 (S.D.N.Y. 2018) (quoting defendant's motion). The court joined a host of other courts in declining to read section 1591 so narrowly:

> Broad, expansive language is employed in Sections 1591 and 1595. See 18 U.S.C. §§ 1591, 1595. Congress's use of the word "whoever" and its repeated use of the word "any" "does not lend itself to restrictive interpretation." United States v. Jungers, 702 F.3d 1066, 1070 (8th Cir. 2013) ("By its terms, § 1591(a)(1) applies to 'whoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, or maintains [a child] by any means.' These words do not lend themselves to a restrictive interpretation.") (collecting cases); United States v. Todd, 627 F.3d 329, 336 (9th Cir. 2010) (Smith, M., concurring) ("[Section 1591] allows for a conviction even where the defendant did not personally use force, fraud or coercion," so long as he knew such means would be used.). . . .
>
> Where, as here, a broad statute has a plain and unambiguous meaning, it ought to be interpreted broadly. BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what is says. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (internal citation omitted); United States v. Estrada-Tepal, 57 F. Supp. 3d 164, 167 (E.D.N.Y. 2014) ("18 U.S.C. § 1591 unambiguously covers a broad range of conduct with no requirement that a defendant intend to further any underlying sex trafficking scheme."); see also United States v.

8

> Thompson, No. 16-2986, 896 F.3d 155, 2018 U.S. App. LEXIS 19175, 2018
> WL 3398213, at *8 (2d Cir. July 13, 2018) (rejecting challenge to Section
> 1591 on constitutional over breadth grounds, noting the "broad language of the
> statute and the complexity of the social problem it addresses").

Id. at 516-17. Consistent with the intended breadth of the statute, the Weinstein court found that, while not "an archetypal sex trafficking action," the allegation that the defendant used fraudulent promises of career advancement to cause his victim to engage in sex acts plausibly established a section 1591 violation. Id. at 515. Accordingly, the fact that the defendant's alleged conduct is not that of the stereotypical sex trafficking case, does not preclude a prosecution under section 1591. The defendant, like Weinstein, is accused of using force, threats of force, fraud and coercion to cause his victims to engage in a commercial sex act, bringing his conduct within the ambit of section 1591.

In arguing for a contrary conclusion, the defendant again accords undue weight to the fact that the victims previously engaged in consensual acts of commercial sex with the defendant and others. (Def.'s Mem. 4 (noting that the victims "worked voluntarily as prostitutes" that "the government does not allege that [the defendant] or anyone else forced [them] to work as prostitutes")). The defendant suggests, for example, that the defendant only may be found culpable if he sought to entice, transport, obtain, patronize and solicit a "human trafficking victim," which the defendant exclusively defines, without citation to any statutory text, as someone forced into prostitution. Id. at 10 (asserting some constitutional error in the fact that the government has never referred to either Jane Doe #1 nor Jane Doe #2 [] as anything other [than] 'sex workers' . . . . [t]he government has never alleged that they are minors or trafficking victims."). But, as outlined supra, in enacting section 1591, Congress applied an expansive definition of trafficking. Consistent with that, it did not limit the category of people to which section 1591 extends protection other than to say that defendants shall be liable where they engage in prohibited conduct with respect to "any person." The fact that Jane Doe #1 and Jane Doe #2 were sex workers does not mean they somehow fall beyond the protections of Section 1591. Indeed, the government submits that it was the victims' position as sex workers—a class unlikely to report acts of abuse or coercion—that rendered them uniquely vulnerable to the defendant's coercive conduct. The defendant's self-serving attempt to improperly limit the scope of section 1591 has no basis in law and should be flatly rejected.

### C. The Government's Allegations Charge Conduct that Affects Interstate Commerce

Finally, the defendant's conduct had a sufficient effect on interstate commerce to defeat the defendant's as-applied challenge on that that ground. Congress found that sex trafficking has a substantial effect on interstate commerce such that it is within the power of Congress to regulate. See United States v. Todd, 627 F.3d 329, 333 (9th Cir. 2010) (in enacting the TVPA, "Congress concluded that prostitution in American cities encouraged and enlarged the market for this traffic from abroad," that "[s]ex traffic was a global matter," and that the TVPA deals with commerce within the power of Congress to regulate.").

9

Where, as here, "the type of activity at issue has been found by Congress to have a substantial connection with interstate commerce, the government need only prove that the individual subject transaction has a de minimis effect on interstate commerce." United States v. Miller, 116 F.3d 641, 674 (2d Cir. 1997); see also United States v. LaBarbara, 129 F.3d 81, 87-8 (2d Cir. 1997) (crimes containing an "affecting commerce" element, "need involve only a de minimis effect on interstate commerce"). Cases where, as here, a defendant used cellular telephones to engage in sex trafficking have sufficed to establish such a de minimus showing. See United States v. Baston, 818 F.3d 651 (11th Cir. 2016) (there was evidence that defendant's trafficking was "in or affecting interstate commerce," based on his use phones, text messages, and the internet to communicate with and direct victims); United States v. Brinson, 772 F.3d 1314 (10th Cir. 2014) (jury could reasonably have found defendant guilty of sex trafficking where, among other things, evidence indicated he had utilized facilities of interstate commerce, like the internet and cellular phones to engage in sex trafficking). The defendant is alleged to have used his cellular telephone to arrange his meeting with the victims on the dates charged in the indictment, this satisfies the showing necessary to establish his conduct affected interstate commerce.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss should be denied in its entirety.

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By:   /s/ Monica K. Castro
       Monica K. Castro
       Assistant U.S. Attorney
       (631) 715-7894