UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                      Plaintiff,              **MEMORANDUM AND ORDER**

 - against -                                      2:19-cr-537 (DRH) (SIL)

ANDREW FREY,

                      Defendant.
----------------------------------------------------------------X

**APPEARANCES**

**BREON PEACE**
**UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, NY 11722
By:   Oren Gleich, Esq.
        Ivory Bishop, Esq.

**FEDERAL DEFENDERS OF NEW YORK, INC.**
Attorneys for Defendants
267 Carleton Avenue, Suite 301
Central Islip, NY 11722
By:   Tracey Gaffey, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Defendant Andrew Frey ("Frey") made a pretrial motion to suppress on January 10, 2022. The Government responded on March 7, 2022, and this Court held oral argument April 11, 2022. At argument, this Court ruled from the bench on certain issues and reserved decision on others. Specifically, the Court denied Frey's motion for a hearing on the consent search and seizure of items from his home, denied Frey's motion to suppress evidence seized pursuant to a warrant pertaining to his

Jeep, and denied as moot Frey's motion to suppress evidence obtained pursuant to a warrant pertaining to his Facebook account. The Court reserved decision with respect to Frey's challenges to a warrant for his cell site information and a warrant for his electronic devices. For the reasons set forth below, these two outstanding portions of Frey's motion are denied.

## BACKGROUND

The following facts draw from the indictments, [DEs 1, 70, 79], and the search warrant applications, Exs. A–D to Mot. to Suppress, [DEs 51-2 to -5].

Jane Doe #1[1] reported to law enforcement that, in August 2018, Frey hired her for commercial sex. After two meetings, he suggested they go to the beach; Jane Doe #1, who initially was uncomfortable doing so, agreed. At the beach, Jane Doe #1 felt that Frey intended to hurt her. In October 2018, they arranged another meeting – but she told him she would not go to the beach. When he picked her up in his Jeep, however, Frey informed her that they were going there anyway. Jane Doe #1 objected, causing Frey to scream at her, threaten her, and hit her. Jane Doe #1 escaped by unlocking the car door and jumping from Frey's moving vehicle. A friend, John Doe, picked her up. But Frey tracked them down and, armed with a knife,

---

[1] In the text of this decision, the Court uses the Jane Doe numbering designations utilized in the search warrant affidavits, not the numbering in the indictments. Parenthetically, however, the Jane Doe #1 referenced in the search warrant affidavits is the same individual listed as Jane Doe #1 in Counts One and Two of the indictments; Jane Doe #2 mentioned in the affidavits is not listed as an alleged victim in any of the counts of the indictments; and Jane Doe #3 in the affidavits is the woman identified as Jane Doe #2 in Counts Three and Four of the indictments.

attempted to enter John Doe's vehicle. Frey then chased the two in his Jeep, but they eluded him.

Jane Doe #2, another sex worker, reported to law enforcement that she also was afraid of Frey, having met him in October 2016. She said Frey had threatened her, that she witnessed his violence towards other sex workers, and that, on one occasion, Frey had handcuffs in his vehicle. She also noted his affinity for taking sex workers to the beach and that he liked to record Jane Doe #2 performing sex acts on him.

Jane Doe #3 reported to law enforcement that, in June 2019, Frey solicited her for commercial sex. He had requested they go to the beach, but Jane Doe #3 refused. Instead, he drove them to a secluded wooded area. Jane Doe #3 told him that she did not want to go, but Frey ignored her. She asked to exit his vehicle, causing Frey to become aggressive and to yell that he owned her. Each time Jane Doe #3 tried to open the car door to escape, Frey grabbed her to keep her in the vehicle. She eventually succeeded and jumped from Frey's moving vehicle.

On November 14, 2019, a grand jury indicted Frey on two counts of attempted sex trafficking by force, 18 U.S.C. §§ 1594(a), (b)(1), and two counts of attempted kidnapping, 18 U.S.C. § 1201(d).

Two warrants are relevant to this Memorandum and Order. First is a November 12, 2019 warrant authorizing law enforcement to search and seize the T-Mobile "records and information associated with" Frey's cell phone going back to October 2016. Cell Site Info. Wt., Ex. A to Mot. to Suppress [DE 51-2]. The Cell Site

Information Warrant targets, among other data, (1) local and long distance telephone connection records, (2) the date, time, method, source and destination of all communications from Frey's phone, as well as (3) "information regarding the cell tower and antenna face . . . through which the communications were sent and received" – so long as they constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1201, 1591(a). *Id.* Second is the November 22, 2019 warrant authorizing a forensic examination of a Pentax camera, film, and electronic devices[2] taken from Frey's residence. Elec. Device Wt., Ex. C to Mot. to Suppress [DE 51-4]. The Electronic Device Warrant targets (1) Frey's contact with sex workers and victims; (2) Frey's communications with sex workers and victims; (3) Internet searches and other communications related to Frey's involvement in the subject offenses; (4) names and contact information of sex workers and victims; (5) photographs and videos tending to show Frey's association with sex workers and victims; (6) recordings and information demonstrating Frey's geographical movements with respect to the subject offense – so long as they relate to violations of 18 U.S.C. §§ 1201, 1591(a). *Id.*

On January 10, 2022, Frey challenged these warrants in a pretrial motion to suppress. [DE 51]. Briefing was completed on March 7, 2022, and oral argument

---

[2] The electronic devices were: (a) a Rocketek USB Drive, (b) a SanDisk Memory Card, (c) an HP Laptop computer, (d) a black Dell Laptop computer, (e) an SD Card, (f) a Verizon 4G cellular device, (g) an Android Armor Phone, (h) a black cellular device with IMEI 014662009500191, (i) a cell phone with Serial Number 10800080631206, (j) a Grey Acer laptop with a Seagate external hard drive, (k) a Sony cell phone, (*l*) approximately 16 USB drives, (m) 12 Micro SD Cards, (n) a Micro SD card contained in a Samsung adapter. Elec. Device Wt. Attach. A-2.

occurred on April 11, 2022. At argument, this Court reserved decision with respect to the suppression of evidence obtained pursuant to the Cell Site Information Warrant and the Electronic Device Warrant. This Memorandum and Order decides these remaining issues.

## DISCUSSION

The Court begins by outlining the legal standards applicable to a warrant's particularity and overbreadth, which are the legal principles on which Frey challenges the warrants. The Court then analyzes the Cell Site Information Warrant and the Electronic Device Warrant. The Court concludes by looking at the good-faith exception to the exclusionary rule. In the end, Court finds the subject warrants proper and, even if, *arguendo,* they were not, the good faith exception to the exclusionary rule applies.[3]

## I. Warrant Particularity and Overbreadth

The Fourth Amendment's particularity requirement prevents "general searches" and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (internal quotation

---

[3] Were the warrants not sufficiently particularized and/or overbroad, and the good faith exception inapplicable, the remedy "is not invalidation of the search [in its entirety] but suppression of those [problematic] items." *United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992); *see United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013) ("When a warrant is severable, the portion of the warrant that is 'constitutionally infirm . . . —usually for lack of particularity or probable cause—is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted.'" (quoting *George*, 975 F.2d at 79)). Neither the parties nor the Court reach this issue.

marks omitted). Sufficiently particularized warrants (1) "identify the specific offense for which the police have established probable cause," (2) "describe the place to be searched," and (3) "specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 100–04 (2d Cir. 2017) (quoting *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013)).

"[B]readth and particularity are related but distinct concepts." *Ulbricht*, 858 F.3d at 102. An overbroad warrant "permits officers to search or seize items without probable cause that they contain evidence of a crime." *United States v. Kidd*, 386 F. Supp. 3d 364, 374 (S.D.N.Y. 2019). "Probable cause exists if the information in the warrant's supporting affidavit supplies 'a fair probability that contraband or evidence of a crime will be found in a particular place' or in certain records to be searched." *United States v. Del Villar*, 2021 WL 4312060, at *4 (S.D.N.Y. Sept. 22, 2021) (quoting *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000)). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks omitted).

## II.   Cell Site Information Warrant

Frey contends the Cell Site Information Warrant is not particularized. Frey also challenges the breadth of the warrant's authorization to search and seize "records and information associated with" Frey's cell phone going back to October 2016. Mot. to Suppress at 13–15; Tr. of Oral Arg. at 19:14–22:19. He notes that the specific acts charged involving sex trafficking and kidnapping occurred in October 2018 (Counts One and Two) and July 2019 (Counts Three and Four). Accordingly,

the argument continues, the Cell Site Information Warrant affidavit "asserted probable cause for [only] two time periods: one day in October[] 2018 [for Counts One and Two] and another day in [July] 2019 [for Counts Three and Four]." Mot to Suppress at 13. Frey thus concludes that law enforcement lacked probable cause to search for, *inter alia*, any pre-October 2018 cell site information.

The Cell Site Information Warrant, however, meets all three of particularization criteria. Its incorporated Attachment B names Frey's offenses: Sex Trafficking by Force, Fraud or Coercion (18 U.S.C. § 1591(a)) and Kidnapping (18 U.S.C. § 1201). Attachment B also lists nine categories of information, "for the time period October 2016 to the present," to be provided. Its incorporated Attachment A identifies the property held by T-Mobile with reference to Frey's cell phone number and his device's international mobile subscriber identity ("IMSI") number.

The warrant is not overbroad in extending to cell site information dating to between October 2016 and the first alleged acts of sex trafficking and kidnapping in October 2018. Probable cause arises from "all the circumstances set forth in the [warrant] affidavit," *Gates*, 462 U.S. at 238, which identifies facts with "probative value that extended beyond the particular dates on which th[e] events occurred," *United States v. Ray*, 541 F. Supp. 3d 355, 397 (S.D.N.Y. 2021). Jane Doe #2 told the affiant that she met Frey "as early as October 2016," that he "personally threatened her," that she "has seen instances of [Frey's] violence towards other sex workers," and that Frey liked to take sex workers to the beach. Cell Site Info. Wt. Aff. ¶¶ 14(a)–(d), 22. The Court disagrees with Frey's reading that Jane Doe #2's statements relate to

prostitution generally and not to Frey's alleged sex trafficking or kidnapping specifically. There is probable cause to tether her statements to "a criminal course of conduct involving a particular set of victims [*i.e.*, sex workers] that began prior to" October 2018. *See Ray*, 541 F. Supp. 3d at 397. Frey perpetrated this conduct in part through his cell phone and by taking sex workers to the beach. The Cell Site Information Warrant therefore was not overbroad in seeking data going back to the first known date on which Frey encountered Jane Doe #2.

The Court denies Frey's motion to suppress evidence obtained pursuant to the Cell Site Information Warrant.

## III. Electronic Device Warrant

Frey contends the Electronic Device Warrant is also not particularized. He adds it is overbroad because it "essentially allowed a search of everything without regard to a timeframe." Mot. to Suppress at 15–18. He further challenges the warrant's asserted nexus between the property to be searched and the asserted probable cause; in his view, law enforcement did not have probable cause to believe evidence of Frey's charged crimes would be located on the devices. *Id.*

As an initial matter, it is questionable whether law enforcement needed the Electronic Device Warrant to search the contents of the camera, film, and various electronic devices. The FBI obtained those devices after Frey's wife's consented to a search of their residence, basement, and garage.[4]  Elec. Device Wt. Aff. ¶¶ 24–25.

---

[4]   At oral argument, this Court relied primarily on the rationale and holding in *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008) (Sotomayor, J.), to deny Frey's

Her "open-ended consent would permit the search and seizure of any items found in [the residence, basement, and garage] with the exception of those 'obviously' belonging to" him. *United States v. Snype*, 441 F.3d 119, 136 (2d Cir. 2006) (quoting *United States v. Zapata–Tamallo*, 833 F.2d 25, 27 (2d Cir. 1987) (per curiam)). Frey may contend his wife's consent search could not reach the devices and/or their stored information because they were obviously and exclusively his. Tr. of Oral Arg. at 47:13–50:19. But demonstrating so is not easy and Frey has not adduced credible evidence to that end. *See Snype*, 441 F.3d at 136 ("The burden is not easily satisfied."). The camera was recovered from the bedroom, the SanDisk Memory Card and SD Card from the garage, and the other devices from the basement. Elec. Device Wt. Aff. ¶ 24. Although Frey's wife could not "physically walk down" the basement stairs, the door thereto was "not locked, confirming [Frey's] wife and other members of the residence had access to the same." *Id.* ¶ 25. No evidence suggests otherwise.

Even if Frey's wife's physical impairment leads to the conclusion that the devices in the basement were obviously and exclusively Frey's, law enforcement *did* obtain a warrant. That warrant survives Frey's challenge.

The Electronic Device Warrant is particularized in that its incorporated attachments (1) identify Frey's offenses; (2) itemize each and every electronic device to be searched with reference to its Evidence Log number; and (3) list seven types of "records and information," each of which must be related to "sex workers and victims"

---

motion to hold a hearing to determine the factual circumstances relating to Frey's wife's consent. Tr. of Oral Arg. at 8:24–18:24.

or the "subject offenses." Elec. Device Wt. Attachments A-1, B-2 (capitalization omitted).

Frey's overbreadth challenge that the Electronic Device Warrant's "allowed a search of everything without regard to a timeframe," Mot. to Suppress at 17, is contradicted by the warrant's express limitation to information from or after October 2016, *see* Elec. Device Wt. Attachments B-1, B-2. The breadth of the electronic data searched is not constitutionally problematic under the circumstances. *Ulbricht*, 858 F.3d at 102–03 ("[A] broad warrant allowing the government to search [a] laptop for potentially extensive evidence of th[e] crimes does not offend the Fourth Amendment, as long as that warrant meets the three particularity criteria . . . ."). "[B]ecause there is currently no way to ascertain the content of a file without opening it and because files containing evidence of a crime may be intermingled with millions of innocuous files, 'by necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there.'" *Galpin*, 720 F.3d at 447 (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc) (per curiam)). It is, accordingly, not overbroad on this basis.[5]

Frey's next challenge—to the nexus between the devices and the asserted probable cause to believe they would contain evidence relating to sex trafficking and kidnapping—also fails. According to the Electronic Device Warrant's supporting

---

[5] The Second Circuit's opinion in *United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016), provides a helpful discussion about the differences between "the search of a digital storage medium" and "the search of a file cabinet."

affidavit, Jane Doe #2 told law enforcement that (i) Frey threatened her and she witnessed Frey's acts of violence towards other sex workers, (ii) Frey liked taking sex workers to the beach, and (iii) Frey had handcuffs in his car on one occasion – all of which statements are consistent with the crimes charged. Elec. Device Wt. Aff. ¶¶ 15(b)–(e). Her additional statement—that Frey "liked to record" her performing commercial sex acts—was corroborated by the "homemade pornographic images and videos showing Frey's interaction" with Jane Doe #2 later discovered on his cell phone, which was seized and searched pursuant to a warrant Frey does not challenge. *Id.* ¶ 15(f). A forensic review of the phone revealed that Frey exported several files to other mediums – to wit, electronic devices. *Id.* ¶ 27. Frey's wife told law enforcement that Frey "watches pornography in the basement" where the electronic devices were found. *Id.* ¶ 25. Such facts establish probable cause to search the devices for evidence of the subject crimes; the warrant "link[ed] th[e] evidence to the criminal activity supported by probable cause." *See United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010); *e.g.*, *Kidd*, 386 F. Supp. 3d at 375 (electronic device warrant supported by probable to cause to believe evidence of sex trafficking by force could be found in the device's "contact information").

The Court denies Frey's motion to suppress evidence obtained pursuant to the Electronic Device Warrant.

### IV. Good Faith Exception

Assuming *arguendo* that Frey is correct and that one or more of the challenged warrants is constitutionally flawed, the evidence obtained in reliance thereon may

still be admissible so long as law enforcement's reliance was "objectively reasonable" and a detached and neutral magistrate judge issued the warrants. *United States v. Leon*, 468 U.S. 897, 922 (1984); *see Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence, however, has always been our last resort, not our first impulse."). "[W]here the officer's conduct is objectively reasonable"—*i.e.*, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"—excluding the evidence would in no way deter police illegality; it may even "make [an officer] less willing to do his duty." *Leon*, 468 U.S. at 919–921 (internal quotation marks omitted). "'The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant." *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (quoting *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992)). Yet "most searches conducted pursuant to a warrant would likely fall within [the good faith exception's] protection." *Id.* (citing *Leon*, 468 U.S. at 922).

Only in four circumstances does this "good-faith exception" not apply: (1) where the issuing judge has been knowingly misled; (2) where the issuing judge wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient such as by failing to particularize the place to be searched or the things to be seized that reliance upon it is unreasonable. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (Sotomayor, J.).

Frey contends the warrants were "obviously deficient" in that they enabled the Government to seize and search "a large volume of unresponsive material" akin to an impermissible general warrant. Mot. to Suppress at 19–21. Frey's argument constitutes an unsuccessful attempt to demonstrate his case satisfies the fourth basis for not applying the good faith exception: unreasonable reliance due to facial deficiency. This basis triggers upon a "glaringly deficient warrant" that "[n]o reasonable officer" would presume valid. *United States v. Purcell*, 967 F.3d 159, 180 (2d Cir. 2020) (quoting *In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 163 (2d Cir. 2019)). Such was the case in *In re 650 Fifth Ave.* because the warrant did "not even arguably include a reference to the . . . alleged crimes or a temporal scope for the items to be seized." *In re 650 Fifth Ave. & Related Props.*, 934 F.3d at 163. No analogous infirmity exists here; the warrants' faces reference the alleged crimes (18 U.S.C. §§ 1201, 1591, 1594) as well as a temporal limitation (in or after October 2016). *See* Cell Site Info. Wt.; Elec. Device Wt.

At oral argument, Frey added that the Electronic Device Warrant was unreliable because the three Jane Does' reliability could not be ascertained. Tr. of Oral Arg. at 29:19–30:6. This position corresponds to the third basis for not applying the good faith exception: that the Electronic Device Warrant application was so lacking in indicia of probable cause as to render reliance upon it unreasonable. This third basis "is a 'very difficult threshold to meet.'" *United States v. Burgos*, 2021 WL 3788962, at *9 (S.D.N.Y. Aug. 25, 2021) (quoting *Falso*, 544 F.3d at 128 n.24). "[I]t is improper to discount an informant's information simply because [she] has no proven

Page **13** of **15**

record of truthfulness or accuracy." *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993) (citing *Gates*, 462 U.S. at 237–38); *United States v. Nelson*, 828 Fed. App'x 804, 807 (2d Cir. 2020) ("Circuit precedent does not require informants to have a track record of reliability."). The Jane Doe accounts corroborate each other in material respects. All three are sex workers from whom Frey solicited commercial sex; all three identified Frey's affinity for taking sex workers to the beach; all three were threatened by and afraid of Frey. Elec. Device Wt. Aff. ¶¶ 9, 15, 16. This entitled the magistrate to credit their "entire account[s] . . . , including parts without corroboration." *Canfield*, 212 F.3d at 719–20 (quoting *Wagner*, 989 F.2d at 73). Accordingly, the Electronic Device Warrant affidavit gave sufficient indicia of probable cause such that law enforcement could, and did, reasonably rely on it; the good faith exception applies.

Accordingly, were the warrants (contrary to the fact) somehow constitutionally deficient, this Court holds that the totality of the circumstances would not have led a reasonably well-trained officer to know the warrants Frey challenges were illegal and, therefore, Frey's motion to suppress would be denied.

## CONCLUSION

For the reasons discussed above, Frey's motion to suppress evidence obtained pursuant to the Cell Site Information Warrant and the Electronic Device Warrant is denied. Both warrants are particularized, are not overbroad, and are linked to the probable cause set forth in their supporting affidavits. Nonetheless, were the warrants invalid, the good faith exception to the exclusionary rule applies. This

Court, through oral argument and this Memorandum and Order, has now adjudicated all issues raised in Frey's motion to suppress.

**SO ORDERED.**

Dated: Central Islip, New York　　　　　　s/ Denis R. Hurley
　　　　April 29, 2022　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　United States District Judge