UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                        Plaintiff,            **MEMORANDUM AND ORDER**

 - against -                                                  2:19-cr-537 (DRH) (SIL)

ANDREW FREY,

                                        Defendant.
-------------------------------------------------------------X

**APPEARANCES**

**BREON PEACE**
**UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF**
**NEW YORK**
610 Federal Plaza
Central Islip, NY 11722
By:    Oren Gleich, Esq.
         Ivory Bishop, Esq.

**FEDERAL DEFENDERS OF NEW YORK, INC.**
Attorneys for Defendants
267 Carleton Avenue, Suite 301
Central Islip, NY 11722
By:    Tracey Gaffey, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

        Pending before the Court are four pretrial motions, three of which were filed

by Defendant Andrew Frey ("Frey") and one of which was filed by the government.

They are: Frey's two motions to sever, Frey's motion to exclude untimely disclosed

statements, and the government's motion to preclude evidence of Jane Does #1 and

#2's[1] sexual histories.

---

[1]    The Jane Doe numbering designations herein are those used in the
Indictments.

None of the motions overlap as to the facts and legal issues, aside from those on the motions to sever. Accordingly, the Court addresses the motions in three sections: (I) the motions to sever; (II) the motion to exclude untimely disclosed statements; and (III) the motion to preclude evidence of victim's sexual histories.

For the reasons set forth below, Frey's motions to sever are granted and his motion to exclude untimely disclosed statements is denied. The government's motion to preclude evidence of victim's sexual histories is granted in part and denied in part.

## I.    Frey's Motions to Sever

The government filed a Superseding Indictment on March 24, 2022. [DE 70]. In response, Frey brought his first motion to sever on March 30, 2022, [DE 73]; the government responded on April 13, 2022, [DE 81]; and Frey replied on May 3, 2022, [DE 85]. The government filed a Second Superseding Indictment on April 7, 2022. [DE 79]. Frey filed his second motion to sever on June 1, 2022, [DE 86]; the government responded on June 8, 2022 [DE 87].

Together, Frey's motions ask the Court to sever Counts 1 through 4 (two counts of attempted sex trafficking and two counts of attempted kidnapping) from Count 5 (possession of a firearm by a convicted felon) and Count 6 (obstruction of justice).

### A.    Relevant Facts

On November 14, 2019, the government indicted Frey on two counts of attempted sex trafficking and two counts of attempted kidnapping (together, "Counts 1–4") after he allegedly attempted to take Jane Does #1 and, on a later occasion, Jane Doe #2 to a beach for commercial sex. In June of 2020—seven months after Frey's

arrest—law enforcement found a black handgun and ammunition in a locked safe affixed to a file cabinet in the basement of Frey's home.  The Court refers to this firearm as the "Black Gun."  The Black Gun does not appear to have a wooden handle or a distinctive logo of any kind.

On August 3, 2021, Jane Doe #2 told law enforcement, for the first time, that "before [the events charged as attempted sex trafficking and attempted kidnapping, Frey] previously showed her" a handgun with a wooden handle and logo of eagle wings.  The Court refers to this firearm as the "Eagle Wings Gun."  Jane Doe #2 said the "experience did not bother her because she had grown up around guns."  In subsequent interviews, Jane Doe #2 never again mentioned the Eagle Wings Gun.

On March 24, 2022, the government filed a superseding indictment, adding a fifth count: possession of a firearm by a convicted felon ("Count 5").  This fifth count relates to the Black Gun discovered in June of 2020.

On April 7, 2022, the government filed a second superseding indictment, adding a sixth count: obstruction of justice.  This sixth count concerns Frey's alleged attempt, in recorded jail conversations, to coerce his son into taking possession of the Black Gun.

### B.    Position of the Parties

Frey begins by noting that Jane Doe #1 never mentioned any gun.  He then emphasizes that the Eagle Wings Gun—*i.e.*, the gun Jane Doe #2 will testify Frey showed her (in regard to Counts 3–4)—is a different gun than Black Gun—*i.e.*, the basis for Count 5.  Frey claims neither Jane Doe #1 nor #2 will testify that Frey

displayed a gun or threatened to use it during the charged events.  Accordingly, he contends, the evidence in proof of Counts 5 and 6 has "no relevance" to that of Counts 1–4.  Frey also claims that he "may" exercise his right to testify with regard to Counts 1–4 but remain silent as to Count 5.  As such, the Federal Rules of Criminal Procedure ("Criminal Rules") require severance in order to prevent substantial unfair prejudice to Frey.

The government begins by noting Jane Doe #2 will testify that Frey showed her the Eagle Wings Gun and told her that he kept more guns at home.  They argue, therefore, that this testimony will prove Counts 1–4 by showing Frey had the means necessary to carry out the crimes and will prove Count 5 by showing Frey, subsequent to an unrelated predicate felony, possessed a firearm.  The government insists that no case law supports severing counts simply because a defendant "may" testify as to some and remain silent as to others.   The government argues against any substantially unfair prejudice to Frey.

### C.    Analysis

Under Criminal Rule 8, an indictment "may charge a defendant in separate counts with [two] or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Even so, under Criminal Rule 14, "if the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires."  Criminal "Rules 8(b) and 14 are designed to promote economy and

efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Severance is not required where "there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced." *United States v. Page*, 657 F.3d 126, 132 (2d Cir. 2011).

A logical connection, in law or in fact, between Counts 1–4 and Counts 5–6 is questionable at best. Whereas a gun may be "an important 'tool'" of narcotics offenses—justifying denying a motion to sever—such is not the case with attempted sex trafficking and attempted kidnapping. *See id.* at 130 (citing *United States v. Muniz*, 60 F.3d 65, 71 (2d Cir. 1995) and *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994)); *United States v. Narzikulov*, 2019 WL 6699801, at *3 (E.D.N.Y. Dec. 9, 2019) (finding felon-in-possession charge "not sufficiently related to . . . conspiracy to commit kidnapping [and] kidnapping" charges). The Black Gun—the subject of Counts 5 and 6—was not shown to either Jane Doe; it is not the Eagle Wings Gun shown to Jane Doe #2. *E.g.*, *United States v. Tubol*, 191 F.3d 88 (2d Cir. 1999) (severance affirmed where crimes premised on "distinctly different" facts).

The government's assertion—that "before the defendant attempted to [sex traffic and kidnap Jane Doe #2], the defendant previously showed her a firearm that he kept underneath the driver's seat of his vehicle"—is ambiguous. It is not clear

whether that occurred on the same date as, or an earlier date than, the alleged sex trafficking and kidnapping events.  Frey's insistence that they occurred on different dates, if true, undercuts the government's contention that the firearms reflect a common plan.

In light of the absence of a logical connection, the Court does not believe a limiting instruction would sufficiently cure the overly substantial prejudice to Frey. *Narzikulov*, 2019 WL 6699801, at *3 ("The critical feature distinguishing *Page* from the instant case is the 'logical connection' between the felon-in-possession count and the other charges in the indictment.").  "To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities." *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994).

True, the "subjection of [a] [v]ictim to additional trauma . . . disserve[s] the interests of judicial economy and the efficiency of the criminal justice system." *United States v. Riddles*, 2013 WL 3975775, at *2 (S.D.N.Y. Aug. 5, 2013).  The government plans to call Jane Doe #2 at both trials, the second of which would purportedly subject her to additional trauma.  But the trial on Counts 5 and 6 will not address or mention the events charged in Counts 1–4.  By consequence, the testimony likely to cause the most trauma (recounting the events of the alleged attempted sex trafficking and alleged kidnapping) will be elicited once; namely in the trial on Counts 1–4.  With respect to Count 5, she need only testify that, on one occasion after an unrelated prior conviction (with which she was not involved), Frey showed her the Eagle Wings Gun

and said he had more guns at home.  As Jane Doe #2 admitted, that "experience did not bother her because she had grown up around guns" – that is, any additional trauma should not be unduly distressing.

Being that the analysis above counsels in favor of severing Counts 1–4 from Count 5, the "inextricabl[e] link[]" between Counts 5 and 6 requires further severance of Counts 1–4 from 5–6.  Frey's motion to sever Counts 1–4 and 5–6 is granted.

## II.   Frey's Motion to Exclude Untimely Statements

Frey moved to exclude untimely disclosed statements on March 21, 2022.  [DE 64].  The government responded on March 31, 2022.  [DE 75].  And Frey replied on April 20, 2022.  [DE 82].

Frey's motion asks the Court to exclude Frey's apparently unwarned statements made at the time of his arrest because the government disclosed them on March 4, 2022, roughly five weeks before the scheduled trial date of April 11, 2022.

### A.     Relevant Facts

On the day of his arrest, Frey made apparently unwarned statements to law enforcement.  During his arraignment, the government stated, on the record, the substance of those statements.  Frey first requested discovery pursuant to Criminal Rule 16 on November 20, 2019.  Three days later, on November 22, 2019, the government made its first evidence disclosure; however, the disclosure did not include Frey's unwarned statements.  Between March 5, 2020 and December 14, 2021, the government made at least six more disclosures but, as before, failed to include the statements.  It was not until March 4, 2022—five weeks before the scheduled trial

date of April 11, 2022—that the government disclosed the statements.  Due to the instant motion practice, the Court adjourned the trial *sine die*

### B.    Analysis

Under Criminal Rule 16(a)(1)(A), at "a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."  Failure to comply may result in the court "(A) order[ing] that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant[ing] a continuance; (C) prohibit[ing] that party from introducing the undisclosed evidence; or (D) enter[ing] any other order that is just under the circumstances."  Fed. R. Crim. P. 16(d)(2).  To assess whether or not to admit statements untimely disclosed under Rule 16, courts should "look to [1] the reasons why disclosure was not made, [2] the extent of the prejudice, if any, to the opposing party, [3] the feasibility of rectifying that prejudice by a continuance, and [4] any other relevant circumstances."  *United States v. Lee*, 834 F.3d 145, 158–161 (2d Cir. 2016).

The Court need not decide whether or not to admit the statements nor whether or not the government complied with Criminal Rule 16.  Assuming, *arguendo*, that the government's disclosure was untimely, Rule 16(d)(2) offers cures – the second of which (subsection (B)) is most appropriate here.  In fact, the court has already provided such relief by adjourning the trial *sine die*, with no new trial date set as of

the time this Memorandum and Order is signed.  Accordingly, Frey now has—and

has had in the interim—sufficient time to investigate and prepare his case around

the unwarned statements.  *See United States v. Monsanto Lopez*, 798 Fed. App'x 688

(2d Cir. 2020) (affirming district court's discretion in admitting evidence disclosed

"shortly before trial was scheduled to begin" as, thereafter, trial was adjourned for

three weeks, giving defendant "over one month" to review the evidence).  And this

continuance gives Frey time to move to suppress the statements, as he promises to

do.  The prejudice to Frey resulting from the allegedly untimely disclosure, if there is

any at all, is *de minimus* and does not warrant excluding Frey's apparently unwarned

statements due to their untimely disclosure.

Frey's motion to exclude is denied.

## III.   Government's Motion to Preclude Evidence of Victims' Sexual Histories

The government moved to preclude evidence of the Jane Does' sexual histories

on March 2, 2022, to which Frey responded on April 4, 2022, which was followed by

the government's reply on April 13, 2022.

The current indictment refers to two separate incidents on different dates

between Frey and Jane Does #1 and #2, who are sex workers.  The government moves

the Court to preclude Frey from (1) introducing "evidence that [Jane Does #1 and #2]

engaged in prostitution beyond the instances in which [Frey] patronized and solicited

them for commercial sex"; (2) questioning the Jane Does "about their subsequent or

unrelated  prostitution  activity";  (3) otherwise  referencing  "such  inadmissible

evidence  during  voir  dire,  opening  statements,  cross-examination  and  closing

arguments"; or (4) using Jane Does #1 and #2's "last names, addresses, children's names or specific employment information, in open court." The government also moves the Court to require Frey (5) to "provide the specifics to the Court . . . no less than 14 days before trial, with notice to [Jane Does #1 or #2] or witness at issue" of any intention "to introduce sexual history or other sexual behavior evidence with regard to [Jane Does #1 or #2] or witness"; and (6) to refer to Jane Does #1 and #2 "by their first names only." In turn, Frey requests (7) pre-trial disclosure of the Jane Does' addresses.

The Court need not recite any facts beyond that Jane Does #1 and #2 were sex workers and that they met and interacted with Frey in that capacity.

Federal Rule of Evidence ("Evidence Rule") 412(a) prohibits the admission of evidence "involving alleged sexual misconduct" if it is offered to prove (1) that a victim engaged in other sexual behavior, or (2) a victim's sexual predisposition. The prohibited uses, however, are subject to three exceptions in criminal cases; it is undisputed that the first two are irrelevant.[2] Under the third, the Court may admit "evidence whose exclusion would violate the defendant's constitutional rights," Fed. R. Evid. 412(b)(1)(C), which protect the rights to "a meaningful opportunity to present a complete defense" at his trial, *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), and to confront the witnesses against him including by "impeach[ing] the credibility

---

[2]      These exceptions permit the evidence of sexual history "offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence" and "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor." Fed. R. Evid. 412(b)(1)(A)–(B).

of a prosecution witness by cross-examination directed at possible bias," *Davis v. Alaska*, 415 U.S. 308, 309 (1974). Evidence Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" and to "encourage[] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Fed. R. Evid. 412 advisory committee's note to 1994 amendment. As relevant here, Evidence Rule 412 "preclude[s] [a] defendant from arguing that because the victim previously consented to have sex—for love or money—her claims of coercion should not be believed." *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015).

As an initial matter, the following issues are moot after Frey's disavowal of an intention to submit such evidence: Jane Does' "specific instances of sexual conduct with people other than Frey, children's names, places of employment, and home addresses." Should these matters nevertheless become relevant at trial, the Court will address their admissibility then.

With respect to Frey himself, Evidence Rule 412 permits evidence of his sexual history with the Jane Does. Rule 412 does not exclude evidence of sexual conduct "included in," "intrinsic to," and "inextricably intertwined" with that charged in an indictment. *United States v. Ray*, 2022 WL 729861, at *1 (S.D.N.Y. Mar. 10, 2022). Such is the case with the evidence on the attempted sex trafficking and attempted kidnapping. For example, that the Jane Does were prostitutes and that they met Frey in that capacity is a necessary backdrop to understanding how Frey met them.

Further intertwined with Frey's defense (should such evidence exist) would be evidence that the Jane Does connected with Frey after the events charged in the indictments. Accordingly, this evidence is admissible.

Frey asks the Court not to find inadmissible Jane Does' broader, more general sexual history (including time periods and locations) with other clients. Frey's constitutional rights are not implicated by this evidence. The Jane Does' relationships with others do not tend to prove what transpired during the events charged in the indictments; their interactions with others are too divorced from Frey's allegedly criminal acts. *Rivera*, 799 F.3d at 185. This is true of the Jane Does' conduct with others before and after Frey's allegedly criminal actions. *United States v. Alvarez*, 601 Fed. App'x 16, 18 (2d Cir. 2015) ("evidence of [] victims' later prostitution was not critical to protect [defendant charged with sex trafficking's] constitutional rights"); *United States v. Graham*, 2015 WL 6161292, at *9 (S.D.N.Y. Oct. 20, 2015) ("Courts in this circuit have applied Rule 412 to exclude evidence relating to a victim's prior sexual history specifically within the context of sex trafficking cases."). The Court is not persuaded, as Frey speculates, that the jury would otherwise be misled into thinking "Frey forced the [Jane] Does into a life of prostitution or that they were human trafficking victims." In the unlikely event that such a specter should arise, the Court will entertain an application for a responsive limiting instruction.

As to the Jane Does' identifiable information, the Court finds that the jury need not learn their real names. Evidence Rule 611(a) instructs courts to "exercise

reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment." The nature of the Jane Does' relationship and Frey's charged conduct—viz. the use of force in attempting to sex traffic and/or kidnap two sex workers—presents a legitimate concern that the Jane Does are at risk for "undue harassment, humiliation, and embarrassment." Tr. of Conf. at 22:16–22, *United States v. Melendez-Perez*, No. 17-cr-434 (E.D.N.Y. Jan. 6, 2020); *see United States v. Kelly*, 2008 WL 5068820, at *2 (E.D.N.Y. July 10, 2008). This is especially true given the "explicit nature of the conduct that the witnesses will be testifying about." *See United States v. Marcus*, 2007 WL 330388, at *1–2 (E.D.N.Y. Jan. 31, 2007). For example, the government states the evidence will include "video recordings of [Frey] engaging in commercial sex acts" with the Jane Does. Under the circumstances, the interests in protecting their identities outweighs the public's interest in access to the same. *See United States v. Paris*, 2007 WL 1484974, at *2 (D. Conn. May 18, 2007) (Droney, J.). Accordingly, for the Jane Does may testify using their first name and first initial of their last name, neither of which need to reflect their true first names or first last-name initials. *Id.* (permitting Jane Does to "testify at trial using their first names and the first initials of their last name" due to "the likely adverse personal, professional and psychological consequences of publicly linking their identities to their past lives as sex workers"); *see Marcus*, 2007 WL 330388, at *1–4 (permitting witnesses to testify using only their real first names and giving jury instruction).

As to Frey's desire for Jane Does' home addresses, Frey already has sufficient information about the Jane Does to enable him to meaningfully investigate and develop his defense. *Marcus*, 2007 WL 330388, at *2. For example, the government states it has disclosed their full names "and a significant amount of information regarding their personal history and background." Certain locations may be relevant to Frey's defense—where he met the Jane Does and where he attempted to take them—but that is no reason, in and of itself, to justify disclosure of the Jane Does' home addresses. Without more, the Court cannot say their home addresses are in any way related to the charges and that Frey and his counsel require this information.

## CONCLUSION

For the reasons discussed above, Frey's motions to sever are granted because Counts 5–6 bear no logical connection to Counts 1–4. Frey's motion to exclude untimely disclosed statements is denied given the adjournment *sine die* of Frey's trial. The government's motion to preclude evidence of victim's sexual histories is granted in part and denied in part.

**SO ORDERED.**

Dated: Central Islip, New York                     s/ Denis R. Hurley
      June 30, 2022                            Denis R. Hurley
                                      United States District Judge